OPINION *Page 2 
{¶ 1} Defendant-appellant, Romar Montgomery, appeals from his conviction and sentence on multiple felony drug charges in the Licking County Common Pleas Court.
 {¶ 2} On September 22, 2006, appellant was indicted in the Licking County Court of Common Pleas on one count of Trafficking in Crack Cocaine, in violation of R.C. 2925.03 (A)(C)(1)(b), a felony of the third degree (Count 1); one count of Complicity to Commit Trafficking in Crack Cocaine, in violation of R.C. 2923.03 and R.C. 2925.03(A)(C)(1)(d), a felony of the second degree (Count 2); one count of Trafficking in Crack Cocaine, in violation or R.C. 2925.03(A)(C)(1)(f), a felony of the first degree (Count Three); and one count of Trafficking in Cocaine, in violation of R.C. 2925.03(A)(C)(1)(e), a felony of the second degree (Count Four). Appellant appeared before the trial court on October 3, 2006, with counsel, and entered a plea of Not Guilty to all charges.
 {¶ 3} A pre-trial conference was held on October 25, 2006, and a jury trial was scheduled for November 30, 2006. The trial date was continued until January 8, 2007 upon motion of appellant. On January 2, 2007, counsel for the appellant filed a motion to withdraw. This motion was granted by the trial court on January 5, 2007, and the trial was continued until February 27, 2007.
 {¶ 4} On January 5, 2007, appellant sent a letter to the trial court indicating his desire to represent himself in the case. The trial court scheduled a hearing on the motion for January 17, 2007. The trial court advised appellant of the perils of self-representation; advised him of the charges and the potential maximum sentence; and informed appellant that the court could not assist him during the trial. The trial court *Page 3 
thereafter asked if appellant wanted to represent himself to which appellant replied in the affirmative. The trial court granted appellant's request and on January 24, 2007, the trial court appointed stand-by counsel for appellant.
 {¶ 5} Appellant filed a motion to suppress on February 23, 2007. The motion to suppress sought to exclude "any evidence seized by police as a result of a warrantless arrest on September 14, 2006 and any oral statement given by Defendant subsequent to that arrest". The motion generally claimed that appellant's warrantless arrest was improper. Appellant did not seek suppression of his statements, oral or written, due to a lack of Miranda warnings. The trial court held a suppression hearing on February 26, 2007.
 {¶ 6} At the suppression hearing, the State presented the testimony of a detective with the Newark Police Department and the Central Ohio Drug Enforcement Task Force (hereinafter "CODE"), who testified that he monitored a controlled purchase of drugs from appellant by a confidential informant ("CI") on August 18, 2006. The detective testified that he met with the CI on that date, conducted a thorough search of the CI, equipped the CI with a wire, and gave the CI recorded buy money. The CI made a telephone call to appellant. The detective testified that he recognized the voice on the other end of the telephone as the voice of the appellant, and that appellant told the CI to meet up with him on the corner of Clarendon Avenue in Newark, Ohio.
 {¶ 7} The detective testified that the standard protocols were used with the CI, including a thorough search of the Cl's person and vehicle, and that officers were monitoring the CI at all times during the purchase. The detective testified that officers followed the CI to the indicated location from the telephone call, and witnessed the CI *Page 4 
make contact with an individual that the detective recognized as the appellant. The officers continued to monitor as the appellant entered the Cl's vehicle, and as the vehicle proceeded to a house at a nearby street. The detective testified that appellant went inside this house, while the CI remained in the vehicle, and that the appellant was in the house for approximately one minute.
 {¶ 8} Officers continued to conduct surveillance of the Cl's vehicle as the appellant reentered the vehicle. Appellant and the CI made a brief stop on North Buena Vista Street. Neither the appellant nor the CI exited the vehicle at this brief stop, and the vehicle proceeded to drive to the Budget Inn, which is located on 7th Street in Newark, Licking County, Ohio.
 {¶ 9} While the vehicle was in the parking lot of the Budget Inn, the detective testified that he heard appellant on the live wire inform the CI that his price would be $150.00. The detective testified that he could hear movement between the two individuals in the vehicle. Appellant then exited the vehicle and disappeared behind the building of the Budget Inn.
 {¶ 10} The CI then drove the vehicle to a predetermined location to meet with the law enforcement officers, where the CI gave to the officers purported crack cocaine that the CI said he had purchased from appellant. The CI and his vehicle were searched by the officers and they secured the alleged illegal substance for evidence.
 {¶ 11} Newark Police and CODE did not arrest the appellant at that time because they had intended to conduct multiple controlled buys of the appellant to demonstrate a pattern of drug trafficking activity. *Page 5 
 {¶ 12} The detective testified that he attempted to conduct a subsequent buy from the appellant on September 6, 2006. He testified that he initiated a telephone call to the number that he had received from the CI, and that he had recognized the voice on the other end of the call as the voice of the appellant. The voice on the other end of the telephone call advised the detective to call another telephone number, and when the detective called that number, a female answered. The detective indicated to the female over the phone that he needed "a ball," and the female advised him to meet her at "Rose's house" on South 32nd Street in Newark, Ohio.
 {¶ 13} The detective informed the female on the other end of the telephone call that he would prefer to meet up with her at the "Manor House," which is located on 30th Street in Newark, Licking County, Ohio.
 {¶ 14} The detective and officers proceeded to the Manor House, and observed a female pull up to the location in a gold Chevrolet Lumina, which matched the description of the vehicle given to the detective over the phone by the female. A patrolman officer approached the vehicle, and identified two individuals in the vehicle, none of which was the appellant. The patrolman officer placed the female in the vehicle under arrest, conducted a search of the vehicle, and located large quantities of crack cocaine in the female's purse.
 {¶ 15} After the female, later identified as Tacey Bonham, was placed under arrest, the detective contacted appellant asking why Ms. Bonham was not present at the location. Appellant advised the detective over the phone that he would attempt to contact Ms. Bonham and call him back. *Page 6 
 {¶ 16} After the September 6, 2006 arrest of Tacey Bonham, the detective testified that he continued to try to contact appellant at the number given to him by the CI, but that he could not arrange any further purchases.
 {¶ 17} The detective did not attempt to obtain an arrest warrant, and testified that the reason he did not attempt to obtain this warrant was because he did not want the appellant to see that he had an arrest warrant in the public records, which are available online.
 {¶ 18} The detective testified that based upon the August 18, 2006 controlled buy from the appellant and the September 6, 2006 arrest of Tacey Bonham, he had probable cause to arrest appellant at anytime.
 {¶ 19} On September 14, 2006, the detective contacted other officers with the Newark Police Department to inform them that the appellant was to be arrested on sight. Immediately after the detective had issued this request, appellant was stopped in a motor vehicle on 21st
Street in Newark, Licking County, Ohio by a patrol officer of the Newark Police Department. The detective came to the scene of the traffic stop and placed appellant under arrest. After appellant was placed under arrest, officers conducted a search of the motor vehicle in which appellant had been a passenger, and discovered large quantities of cocaine and crack cocaine. The detective testified that the arrest was based upon probable cause from the August 18, 2006 controlled buy with the CI.
 {¶ 20} A patrolman officer of the Newark Police Department also testified at the suppression hearing that his supervising sergeant contacted him on September 14, 2006 and advised that the appellant was to be arrested on sight. He testified that he *Page 7 
recognized appellant from having previously supervised appellant when he was an inmate in the Licking County Justice Center. The patrol officer testified that he observed appellant as a passenger in a vehicle on 21st Street with two other passengers, and further observed that the windshield on the vehicle was cracked. The patrol officer testified that he confirmed appellant's identity after the traffic stop from his Ohio Identification Card. The patrolman officer observed the detective advise appellant of his Miranda rights at the scene.
 {¶ 21} Following the hearing, appellant and the State argued the merits of the motion to the trial court. The trial court denied appellant's motion pursuant to R.C. 2935.04, which allows a police officer to arrest a person without a warrant if the officer has probable cause to believe the individual committed a felony.
 {¶ 22} The next day, February 27, 2007, was the scheduled trial date. At that time, appellant moved for a continuance to remove stand-by counsel. The trial court granted appellant's motions, and a new trial date was scheduled for July 7, 2007.
 {¶ 23} During March 2007, appellant wrote several letters to the trial court asking for re-appointment of counsel. On March 20, 2007, the trial court appointed new trial counsel for appellant.
 {¶ 24} On July 9, 2007, a jury trial commenced. Appellant allowed appointed counsel to represent him at trial. Appellant's appointed counsel made a motion in limine, or in the alternative, a new suppression hearing to exclude statements made by appellant to the detective due to a lack of Miranda warnings. (Jury Trial Tr. at 8 and 10.) In the motion in limine, appellant specifically sought to exclude his written *Page 8 
statement.[1] Id. The trial court denied the motion in limine. (Id. at 12). Further, the trial court denied the motion for a new suppression hearing as untimely. Id.
 {¶ 25} The detective testified at trial that after appellant was removed from the vehicle on September 14, 2006, he read appellant hisMiranda rights and asked appellant if he understood. The detective testified that during the search of the vehicle in which appellant was a passenger, suspected crack cocaine was found underneath the right front passenger seat. Behind the driver's seat of the vehicle, officers retrieved a plastic trash bag containing large quantities of suspected powder cocaine and crack cocaine packaged in plastic baggies wrapped up in clothes. The detective testified that the baggies were indicative of the type of bags that are used to distribute crack cocaine.
 {¶ 26} After the appellant was placed under arrest, he was transported to the Newark Police Department. At the police department, the detective reminded appellant he had been read his rights and asked if appellant understood. During questioning, appellant stated to law enforcement officers that the drugs located in the vehicle belonged to him and that he had picked them up at his apartment, intending to sell the drugs. The detective testified that appellant made this confession at the station, and appellant further indicated to officers that he would cooperate with CODE to set up other drug dealers in the area for exchange of a plea deal. The State admitted into evidence State's exhibit 16, which is appellant's written statement, and the detective read appellant's confession into the record.
 {¶ 27} Another detective of the Newark Police Department testified that he did not personally witness any officer give appellant of hisMiranda rights at the Newark Police Station. This detective, however, stated appellant "was asked if he understood *Page 9 
and if he had been Mirandized. He was — confirmed that, that he understood his rights." He also heard appellant waive his rights at the police station.
 {¶ 28} After the testimony of the State's first three witnesses, appellant requested to be allowed to represent himself. The trial court denied the request stating:
 {¶ 29} "I did some research during the break, and it is up to the trial court once a trial begins as to whether or not to allow a defendant to represent himself.
 {¶ 30} * * *
 {¶ 31} "The Court is aware of your conduct in the past. You have had, I believe, at least three other lawyers that you have not gotten along with. You are not a lawyer yourself. You do not know the rules of evidence.
 {¶ 32} * * *
 {¶ 33} "Well, let the record reflect that the Court is denying his right to represent himself. . ." (Tr. at 216-217.)
 {¶ 34} Following trial, the State moved for the admission of the State's exhibits. The defense objected to the admissibility of State's exhibit 16 on the grounds that appellant had not been properlyMirandized prior to making that written statement. (Id. at 423). The trial court admitted State's exhibit 16 over appellant's objection. (Id. at 438).
 {¶ 35} The jury issued guilty findings on each of the four counts of the indictment, including special findings on each count.
 {¶ 36} The trial court sentenced appellant as follows: Count One, three years in prison; Count Two, five years in prison; Count Three, ten years mandatory in prison as a major drug offender, plus one additional year in prison; Count Four, six years in *Page 10 
prison. The trial court ordered each count to run consecutive for a total prison sentence of 25 years. The Appellant was granted 311 days jail credit.
 {¶ 37} Appellant raises three Assignments of Error:
 {¶ 38} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR BY DENYING DEFENDANT-APPELLANT'S MOTION IN LIMINE AND TIMELY OBJECTION TO EXCLUDE UNLAWFULLY OBTAINED STATEMENTS.
 {¶ 39} "II. THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
 {¶ 40} "III. THE TRIAL COURT COMMITTED PER SE REVERSIBLE ERROR BY DENYING DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION.
 I. {¶ 41} In his first assignment of error, appellant argues the trial court committed error in denying his motion in limine and objection at trial to the admission of the statements he made to police following his arrest. Appellant claims the statements were obtained in violation of the Fourth, Sixth and Fourteenth Amendments to the United States Constitution and Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.3d 694. Specifically, appellant contends the Miranda warning given at the traffic stop were stale at the time of his interrogation and subsequent confession at the police station.
 {¶ 42} The State argues because appellant is making a constitutional challenge to the admission of his statements he should have filed a motion to suppress not a *Page 11 
motion in limine. The State argues a failure to file a motion to suppress, waives the constitutional issue. We agree.
 {¶ 43} A motion to suppress, not a motion in limine, is the proper vehicle for raising challenges to exclude evidence which is the product of police conduct that results in a constitutional violation. State v.French (1995), 72 Ohio St.3d 446, 650 N.E.2d 887, 1995-Ohio-32. A failure to timely file a motion to suppress evidence amounts to a waiver of any such issues for purposes of trial. Crim. R. 12(D) and (H);State v. Wade (1973), 53 Ohio St.2d 182, 373 N.E.2d 1244. The decision as to whether to permit leave to file an untimely motion to suppress is within the sound discretion of the trial court, and we will not reverse a trial court's decision regarding an untimely filed motion absent an abuse of discretion. State v. Rush, 5th App. No. 03CAC01002,2003 WL 21694004, ¶ 7.
 {¶ 44} We note the suppression of appellant's oral and written statements made to police following his arrest based upon inadequate or stale Miranda warnings was not the subject of appellant's suppression motion; argument at the suppression hearing; or the trial court's ruling on the motion. Nothing in the record suggests that appellant was prevented from raising this issue in a timely fashion. Furthermore, appellant waited until the day of trial to present this issue to the trial court, which potentially prejudices the State in the presentation of its case. We find appellant waived his right to assert constitutional objections to the admission of this evidence. Therefore, the trial court did not abuse its discretion in overruling the motion as untimely.
 {¶ 45} Appellant's first assignment of error is overruled. *Page 12 
 II. {¶ 46} In his second assignment of error, appellant argues his trial counsel was ineffective for not timely filing a motion to suppress his statements.
 {¶ 47} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. at 141-142. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie,81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267.
 {¶ 48} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. State v.Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-0448. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. State v. Lavelle, 5th App. No. 07 CA 130, 2008-Ohio-3119, at ¶ 47; State v. Cheatam, 5th App. No. 06-CA-88, 2007-Ohio-3009, at ¶ 86. Furthermore, "[w]here the record contains no *Page 13 
evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Drummond
(2006), 111 Ohio St.3d 14, 41, 854 N.E.2d 1038, 2006-Ohio-5084, quotingState v. Gibson (1980), 69 Ohio App.2d 91, 95, 23 O.O.3d 130,430 N.E.2d 954. See also, State v. Suiste, 5th App. No. 2007 CA 00252,2008-Ohio-5012
 {¶ 49} Therefore, we will review the record to determine whether appellant's statements were unlawfully obtained to determine if a motion to suppress would have been meritorious. In State v. Treesh (2001),90 Ohio St.3d 460, 739 N.E.2d 749, the Supreme Court of Ohio stated: "It is well established that a defendant who is subjected to custodial interrogation must be advised of his or her Miranda rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible. It is also well established, however, that a suspect who receives adequateMiranda warnings prior to a custodial interrogation need not be warned again before each subsequent interrogation. Wyrick v. Fields (1982),459 U.S. 42, 48-49, 103 S.Ct. 394, 396-397, 74 L.Ed.2d 214, 219; State v.Barnes (1986), 25 Ohio St.3d 203, 208, 25 OBR 266, 270, 495 N.E.2d 922,926; see, also, State v. Brewer (1990), 48 Ohio St.3d 50, 58-59,549 N.E.2d 491, 500-501. Police are not required to re-administer theMiranda warnings when a relatively short period of time has elapsed since the initial warnings. State v. Mack, 73 Ohio St.3d at 513-514,653 N.E.2d at 338. Courts look to the totality of the circumstances when deciding whether initial warnings remain effective for subsequent interrogations. State v. Roberts (1987), 32 Ohio St.3d 225, 232,513 N.E.2d 720, 725." *Page 14 
 {¶ 50} The totality of circumstances test in State v. Roberts, supra provides the following factors: (1) the length of time between the giving of the first warnings and subsequent interrogation, (2) whether the warnings and the subsequent interrogation were given in the same or different places, (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, (4) the extent to which the subsequent statement differed from any previous statements, and (5) the apparent intellectual and emotional state of the suspect. Id. at 726.
 {¶ 51} In this case, the detective testified that he read appellant his Miranda rights and asked appellant if he understood after appellant was removed from the vehicle on September 14, 2006. Appellant remained at the scene of the traffic stop while the vehicle was searched. The record is devoid of any testimony as to how long this took. The detective testified he then transported appellant to the Newark Police Department where he asked appellant if he understood he was read his rights. Another detective testified that he heard the detective remind appellant he had been Mirandized and if appellant understood. The detectives questioned appellant at the police station.
 {¶ 52} Because the on-scene detective issued the Miranda warning, was present through out the arrest and questioning, and he reminded appellant he had waived his rights, we find appellant was sufficiently apprised of his Miranda rights. Based on the totality of circumstances test, the warnings given at the time of arrest were sufficient under this set of facts.
 {¶ 53} We find that appellant's post-arrest statements were properly obtained; therefore, any motion to suppress appellant's statements would not have been meritorious. *Page 15 
 {¶ 54} Appellant's second assignment of error is overruled.
 III. {¶ 55} Finally, appellant argues the trial court violated his constitutional right to self representation.
 {¶ 56} In State v. Gibson (1976), 45 Ohio St.2d 366, 354 N.E.2d 399, the Ohio Supreme Court held the Sixth Amendment, as made applicable to the States by the Fourteenth Amendment, guarantees a defendant in a state criminal trial an independent constitutional right of self representation permitting that defendant to proceed to defend himself without counsel when a defendant voluntarily, and knowingly, and intelligently elects to do so. Id. at syllabus, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. However, "Faretta itself and later cases have made clear that the right of self-representation is not absolute. See Martinez v. Court of Appeal ofCal., Fourth Appellate Dist., 528 U.S. 152, 163, 120 S.Ct. 684,145 L.Ed.2d 597 (2000) (no right of self-representation on direct appeal in a criminal case); McKaskle v. Wiggins, 465 U .S. 168, 178-179,104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (appointment of standby counsel over self-represented defendant's objection is permissible);Faretta, 422 U.S., at 835, n. 46, 95 S.Ct. 2525 (no right `to abuse the dignity of the courtroom')." Indiana v. Edwards (2008), 554 U.S. — ,128 S.Ct. 2379, — L.Ed.2d — — .
 {¶ 57} The U.S. Supreme Court has held the right of self-representation does not exist to "avoid compliance with `relevant rules of procedural and substantive law' or to `engage[e] in serious and obstructionist misconduct.'" Indiana, supra, citing Faretta, supra at 834, n. 46. "A trial court must be permitted to distinguish between a *Page 16 
manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel." U.S. v. Frazier-El (2000),204 F.3d 553, 560.
 {¶ 58} Further, a court may refuse an accused's request for self-representation if it is made in an untimely fashion and appears to be a delaying tactic. See State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751, 772 N.E.2d 81. In State v. Vrabel, 99 Ohio St.3d 184,790 N.E.2d 303, 2003-Ohio-3193, the Ohio Supreme Court found a motion for self representation was properly denied as untimely where the defendant made the request after jury selection. See also, State v.Brown, 5th App. No. 2007CA00095, 2008-Ohio-880.
 {¶ 59} In this case, we find the timing of appellant's request for self-representation suggests more of a manipulation of the court system than a sincere desire to invoke his right of self-representation. Appellant had appointed counsel in the beginning of this case who asked to withdraw due to conflict with appellant. The trial court then allowed appellant to represent himself with appointed stand-by counsel for the suppression hearing. The trial court then appointed counsel for the trial at the repeated requests of appellant. After presentation of the third witness at the trial, appellant than requested to represent himself. Appellant spoke repeatedly on the record regarding his displeasure with his trial counsel. Specifically, he did not believe his counsel was adequately following appellant's instructions. The trial court admonished appellant that he was not an attorney. This behavior suggests an obstructionist attitude. Further, because the request was made after the presentation of three witnesses, the self-representation request was untimely. *Page 17 
 {¶ 60} We find the trial court did not err when it required appellant to proceed at trial with his appointed counsel. Appellant's final assignment of error is overruled.
 {¶ 61} The judgment of the Licking County Common Pleas Court is affirmed.
By: Delaney, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant's written confession was labeled as State's exhibit 16. *Page 1